|.BAGNERIS, Judge.
Robert M. Myers was indicted by the Grand Jury for the manslaughter of New Orleans Police officer Joseph Thomas and the manslaughter of Jessie Lopez in violation of LSA-R.S. 14:31. The indictment charged that the manslaughter was committed during the perpetration of a felony, specifically a violation of the Controlled Dangerous Substances Act. Myers was arraigned and pled not guilty.
After trial by jury, Myers was found guilty as charged and was sentenced to serve twenty years at hard labor on each count, with the sentences to run concurrently. Myers filed a motion to reconsider sentence and a motion for appeal. The trial court denied the motion to reconsider sentence and granted the motion for appeal.
This Court reversed the defendant’s convictions and sentences based on insufficiency of evidence and the inapplicability of the felony-murder doctrine. The State sought a writ of certiorari to the Louisiana Supreme Court. The Supreme Court held that: (1) the evidence supported defendant’s conviction for felony manslaughter of the Police Officer shot by defendant’s co-tenant, but (2) the evidence did not support defendant’s felony manslaughter conviction arising from Lthe police shooting of defendant’s co-tenant. The case was remanded to the Court of Appeal to consider the defendant’s assignments of error not addressed previously by the Court of Appeal.

STATEMENT OF THE CASE

Evidence at trial established that the New Orleans Police Department received information over its narcotics hotline that a “cuban male” was selling crack cocaine at 1118 St. Andrew Street in New Orleans. On July 18, 1996, detectives from the narcotics unit set up a surveillance of the house at that address. Detective Keith Fredericks was assigned primary responsibility for the surveillance, and watched the house from a position directly across the street. Detectives Paul Toye and Joseph Thomas also conducted surveillance from a different location. All three detectives observed a second male arrive at the residence on a bicycle at approximately 8:15 p.m. The second male was wearing a dark T-shirt and jeans, and was later identified as defendant. Defendant entered the residence using a key.
The detectives did not observe any narcotics activity prior to defendant’s arrival. However, about fifteen minutes after defendant entered the residence, they saw a woman approach the house and knock on the door. Defendant answered the door and had a conversation with the woman. She handed him what appeared to be U.S. currency and he retrieved an object from inside the house and handed it to her. The detectives observed two other individuals approach the house and make similar transactions. They did not observe any other | amales fitting the vague description given by the police dispatcher on the *887 premises at any time during their surveillance.
Detectives’ Toye and Thomas sought a search warrant based on the tip from the narcotics hotline and on their own observations of what appeared to be narcotics activity. A search warrant was obtained at 10:09 p.m. Approximately eight officers proceeded to defendant’s residence to execute the warrant. Upon their arrival, they observed an unknown male, later identified as Jessie Lopez, sitting on the front steps. As soon as Lopez saw the officers, he ran inside the house and locked the door behind him. Detectives Toye, Thomas, Michael Harrison, and Gabriel Favo-roth pursued Lopez inside the house after announcing themselves as police officers and forcing open the door with a battering ram.
Detective Harrison apprehended the defendant in the den. Detective Harrison ordered him to the floor and defendant cooperated. Detectives Toye and Thomas proceeded to the rear of the house, where they observed a closed bedroom door with light shining from underneath it. Believing that Lopez had fled into that bedroom, Detective Thomas opened the door. Lopez immediately fired two shots, one of which hit Detective Thomas in the chest. Detective Thomas backed out of the doorway and fell to the ground in the hallway. At that point, Detective Toye could see that Lopez had barricaded himself between the bed and wall and was hiding behind a bucket. When Lopez continued to fire, Detective Toye shot and killed Lopez. Detective Wilson, a fellow officer took Thomas to the hospital. Detective Thomas died about an hour later at the hospital.
|4The case was re-classified as a homicide investigation once Lopez was determined to be dead at the scene. Sergeant Cynthia Patterson of the homicide division took charge of the investigation. She and Detective Donald Nides conducted a search of the residence. In the bedroom where Lopez was killed they found a .25 caliber automatic weapon and several empty shells near his body. In that same room they also found eight rocks of crack cocaine wrapped in individual packages, and various drug paraphernalia including syringes, razor blades, and a crack pipe. The officers also discovered some Vicodin pills hidden inside an eyeglass case on the bedside table. In several rooms, including the den where defendant was apprehended, they found loose marijuana and partially smoked marijuana cigarettes.
Peter Richarme testified that he managed the duplex at 1116-1118 St. Andrew Street for his mother. He rented the downstairs apartment to defendant, and defendant subsequently brought in Lopez as a roommate. At defendant’s request, the receipt for the June 1996 rent was made to defendant, but the receipt for the July 1996 rent was made to Lopez. Mr. Ric-harme stated that on the two or three occasions he had visited the property, both defendant and Lopez were there. To his knowledge, defendant and Lopez were both living there up until the day of the shooting.
The tenants of the upstairs apartment, Kirk Hooter and Tammy Smelley, also testified. They both stated that defendant had originally lived with Lopez downstairs, but that he had moved upstairs due to a falling out with Lopez. On the | ¿night of the shooting, defendant had come inside the upstairs apartment after getting off work, but headed downstairs to speak to Lopez about a job Lopez had asked defendant to secure for him. Ms. Smelley testified that she thought crack cocaine was sold from the downstairs apartment. Mr. Hooter also stated that he believed Lopez was involved in selling narcotics.

DISCUSSION

On appeal, the defendant contends:
(1) The trial court erred in allowing evidence of other crimes to be introduced at trial.
*888 (2) The trial court erred in allowing the prosecution to extract a promise to convict from the jury during voir dire.
(3) The prosecutors were not qualified to prosecute the defendant’s case because they had not been sworn in as Special Assistant District Attorneys in Orleans Parish.
(4) The defendant was denied effective assistance of counsel.
(5)The defendant’s sentence is constitutionally excessive.

ASSIGNMENT OF ERROR NUMBER ONE

The defendant contends that the trial court erred by allowing evidence of other crimes to be introduced into evidence during the trial. Specifically, the defendant argues that the testimony of Police Officer Philibert regarding the incident that he observed the defendant engaged in illegal drug activity that occurred some three months earlier should not have been admitted into evidence by the trial court. We disagree.
| fiWhen the defendant chooses to place his character at issue by introducing evidence of his good character, the State is permitted to rebut such evidence either by calling witnesses to testify to the bad character of the defendant, or by impeaching the defense witnesses’ ability to testify to the defendant’s character. State v. Bagley, 378 So.2d 1356 (La.1979).
While the defendant is correct that other crime evidence was introduced at trial it was introduced after the defendant “opened the door” by offering evidence of his good character. At trial, the defense called four character witnesses to testify concerning the defendant’s reputation in the community. Mr. Cyril Zara testified that the defendant did “good work” and was reliable. He stated that he observed the defendant drink a little beer.
On cross-examination, the State asked, “ Mr. Zara, would it surprise you to know that in June of 1996, Mr. Myers was identified by a New Orleans Police Officer as buying crack cocaine?” Mr. Zara responded “ I was not aware of that, no.” Later, the State called Police Officer Russell Phi-libert as a rebuttal witness. Officer Phili-bert testified that he came in contact with the defendant in April of 1996. Officer Philibert testified that:
“I was traveling on Camp Street from St. Andrew toward St. Mary. When I approached the intersection, probably ten feet just past—ten, fifteen feet just past St. Andrew heading toward St. Mary, I observed two subjects standing in the middle of the street. One subject was on a bike, and the other subject was on foot. When I pulled up, I was about ten feet away; and it appeared that I interrupted a drug transaction in the middle of the street. I had one subject holding a plastic bag with Myers holding his palm up with some currency in his hand while he was sitting on his bike. The subject—when observed Zachary—later identified as Zachary Brown—dropped two 17objects into his palm, and it was obvious that Myers gave a heads - up call that a police car was approaching; and he straddled his bicycle paddling off on Camp Street toward Felicity. Zachary Brown was apprenhended. He was palced [placed] under arrest. He was in possession of eleven white rock substance believed to be crack cocaine with $300 in currency.
The defense failed to object to Officer Philibert’s testimony. Therefore, the defense failed to preserve this issue for appeal. This issue cannot be raised for the first time on appeal. LSA-C.Cr.P. art. 841. The defendant’s contention is without merit.

ASSIGNMENT OF ERROR NUMBER TWO

The defendant contends in his second assignment of error that the trial *889 court erred by allowing the prosecution to extract a promise to convict from the jury. We disagree.
During closing argument the State stated the following:
Because you all agreed with us in voir dire and you promised us that you could find him guilty, even though he did not pull the trigger, if he was in the commission of a felony and that two people got killed.
The defense failed to object to this statement in closing argument and thus failed to preserve this matter for appeal. This issue can not be raised for the first time on appeal. LSA-C.Cr.P. art. 841. This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER THREE

The defendant contends in his third assignment of error that the prosecutors were not qualified to prosecute the defendant’s case because they had not been sworn in as Special Assistant District Attorneys in Orleans Parish. We disagree.
The following is an excerpt from the trial court:
IsNow, you think that there’s some housekeeping in order? That because you all are now prosecutors in Jefferson Parish that there has to be something put on the record?
Well, let the record reflect I don’t believe that it requires a swearing in. You are sworn in as an officer of the State. If I go and sit ad hoc in another jurisdiction, I don’t have to be sworn in to sit ad hoc. I sit at the pleasure of the Supreme Court who sent me over. I would assume Harry Connick knows that you’re on loan from Jefferson Parish— ■
And we have part of his staff present; so you’re not an amicus, you’re working prosecutors.
Now, if you want to raise your right hand, I’ll be glad to swear you in, Counselor.
The defense counsel did not object to the prosecutors or suggest to the trial court that the prosecutors needed to be sworn in as special assistant district attorneys. Therefore, this issue was not preserved for appeal and may not be raised for the first time on appeal. LSA-C.Cr.P. art. 841. This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER FOUR

The defendant contends that his trial counsel was ineffective. We disagree.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir.1990); State v. Reed, 483 So.2d 1278 (La.App. 4th Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4th Cir.1986); State v. Landry, 499 So.2d 1320 (La.App. 4th Cir.1986).
The defendant’s claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel’s performance was deficient and that the deficiency prejudiced the defendant. Counsel’s performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed to the defendant by the Sixth Amendment. Strickland, supra at 686, 104 S.Ct. at 2064. Counsel’s deficient performance will have prejudiced the de *890 fendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, supra at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992).
This Court has recognized that if an alleged error falls “within the ambit of trial strategy” it does not “establish ineffective assistance of counsel.” State v. Bienemy, 483 So.2d 1105 (La.App. 4th Cir. 1986). Moreover, as “opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel’s trial decisions. Neither may an attorney’s level of representation be determined by whether a particular strategy is |10successful.” State v. Brooks, 505 So.2d 714, 724 (La.), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
After careful review, we find that the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief. Thus, we pretermit discussion of this issue.

ASSIGNMENT OF ERROR NUMBER FIVE

The defendant argues his sentence is excessive.
Article I, Section 20 of the Louisiana Constitution of 1974 provides that “No law shall subject any person ... to cruel, excessive or unusual punishment.”
A sentence within the statutory limit is constitutionally excessive if it is “grossly out of proportion to the severity of the crime” or is “nothing more than the purposeless imposition of pain and suffering.” State v. Brogdon, 457 So.2d 616 (La.1984), cert. denied, Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Caston, 477 So.2d 868 (La.App. 4th Cir.1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982).
If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Brogdon, supra; State v. Quebedeaux, supra; State v. Guajardo, 428 So.2d 468 (La.1983).
Inin this case, the trial judge did not make specific reference to Article 894.1. However, he did order a pre-sentence report, which extensively detailed the history of defendant’s upbringing and his prior offenses. As such, it appears that the trial court considered the applicable aggravating and mitigating circumstances. Once adequate compliance with Article 894.1 has been met, the trial court may consider sentences given in similar cases in determining whether the sentence given in this particular case was excessive.
In State v. Harrison, 529 So.2d 78 (La.App. 3d Cir.), writ denied, 533 So.2d 16 (La.1988), the defendants were indicted for first degree murder and armed robbery. However, they pled guilty to manslaughter and each was sentenced to the maximum of twenty-one years at hard labor. The court noted that the defendants had no prior convictions. Prior charges for robbery had been dismissed. The defendants shot the victim in the head without provocation and took his wallet.
*891 The defendant in State v. Grey, 522 So.2d 1216 (La.App. 4th Cir.1988) was convicted of manslaughter and sentenced to twenty years. The defendant shot five times at his alleged attempted assailants as they retreated and killed a teenage boy who was an innocent bystander. The defendant shot his weapon down a hallway, which led to the front porch of an apartment complex. The victim was on the front porch.
The Third Circuit in State v. Maxie, 594 So.2d 1072 (La.App. 3d Cir.), writ denied, 598 So.2d 372 (La.1992), affirmed the defendant’s maximum sentence of twenty-one years at hard labor on a conviction for manslaughter. The defendant was twenty-two years of age, had no prior criminal record, and was steadily employed. The defendant shot the victim four times with a .22 caliber [ ^semi-automatic rifle over an alleged theft of goods valued at $600 which the defendant never reported as stolen. The court found that the defendant over-responded to the victim’s alleged actions. The defendant testified that the victim threatened him with the knife after defendant fired the first shot. However, the state’s witnesses testified that the victim was unarmed.
In State v. Smith, 520 So.2d 1252 (La.App. 5th Cir.), writ denied, 523 So.2d 1320 (La.1988), the defendant was convicted of manslaughter and sentenced to twenty-one years at hard labor. The defendant killed the victim while they were involved in an altercation.
This Court in State v. Welch, 550 So.2d 265 (La.App. 4th Cir.1989), affirmed the defendant’s sentence of eighteen years at hard labor on a conviction of manslaughter. The defendant had originally been indicted for second degree murder but was found guilty of manslaughter after a jury trial. The defendant shot the victim three times at close range, once in the head, arm and shoulder. The defendant thought the victim was trying to steal his cocaine. In affirming the sentence, the court noted that the defendant killed the victim on the slightest provocation and while in the commission of a felony.
The defendant in State v. King, 563 So.2d 449 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990), was initially indicted for second degree murder but was convicted of manslaughter and sentenced to twenty-one years at hard labor. The defendant shot and killed his wife during an argument. The defendant shot the victim in the face at close range. This conviction was the defendant’s first felony conviction. In affirming the sentence, the court noted that the defendant showed no remorse.
As noted above, several cases have affirmed maximum sentences for | ^manslaughter convictions even where the defendant had no prior convictions. In the instant case, the defendant was dealing drugs or possessing drugs, and that activity, under the State’s theory of the case, led to the death of a co-perpetrator and a police officer.
The defendant had a long history of alcohol and drug abuse with arrests attributable to that behavior going back to 1978 (shoplifting, criminal damage to property, driving with suspended license, drunk in public, possession of marijuana, resisting arrest, trespassing, issuing worthless checks, driving under the influence.) He pled guilty in 1988 in Ohio to a misdemeanor charge of domestic violence. Thus, we find that the trial court did not abuse its discretion in sentencing the defendant to twenty years at hard labor.
■ Accordingly, the defendant’s conviction and sentence for the death of Detective Thomas are affirmed.

CONVICTION AND SENTENCE AFFIRMED.