ON APPLICATION FOR REHEARING
I, TERRI F. LOVE, Judge.
Applicant, Robert Myers, was convicted of two counts of manslaughter and sentenced to twenty years imprisonment on each count. On appeal this court reversed the trial court on both counts, but the Supreme Court affirmed the reversal of one conviction and reversed the second, remanding the issue. This court affirmed the convictions. Myers filed an application for post-conviction relief. At the hearing on the merits, the trial court denied Myers application and this timely writ application followed. Myers appeals the trial courts denial of his application for post conviction relief. We find the trial court did not err in denying relator’s application for post-conviction relief.
FACTS AND PROCEDURAL HISTORY
The defendant, Robert Myers (“Myers”), was indicted for the manslaughter of New Orleans Police Officer Joseph Thomas and the manslaughter of Jessie Lopez (“Lopez”), violations of La. R.S. 14:31. The indictment charged that the manslaughter was committed during the perpetration of a felony, specifically a violation of the Controlled Dangerous Substances Act. After trial by jury, Myers was found guilty as charged and was sentenced to twenty years at hard labor on each count with the sentences to run concurrently. On appeal this court reversed Myers’ convictions and sentences based on insufficiency of evidence and the | ^inapplicability of the felo *1006 ny-murder doctrine. State v. Myers, 97-2401 (La.App. 4 Cir. 5/26/99), 735 So.2d 935, writ granted, 99-1849 (La.12/17/99), 751 So.2d 865. The Supreme Court affirmed this court’s . decision reversing. Myers’ conviction and sentence relating to Lopez, reversed this court’s decision reversing the conviction and sentence relating to Officer Thomas, and remanded the matter to this court for consideration of the assignments of error not reached before.[1] State v. Myers, 99-1849 (La.4/11/00), 760 So.2d 310 (on rehearing). On remand this court affirmed Myers’ convictions and sentences.[2] State v. Myers, 97-2401 (La.App. 4 Cir. 12/6/00), 773 So.2d 884, writ denied, 2001-0343 (La.1/11/02), 807 So.2d 224.
On January 10, 2003, Myers filed an application for post-conviction relief. On January 24, 2003, Section “H” of the trial court recused itself, and the case was re-allotted to Section “A.” On August 15,. 2003, a supplemental application for post-conviction relief and memorandum were filed. On March 30, 2004, the state filed a response. On March 31, 2004, a hearing on the application was held, and Myers filed a memorandum in support of his ineffective assistance of counsel claim. On June 17, 2004, oral argument was held, and the trial court denied Myers post-conviction relief. This timely writ application followed.
The following facts are taken from this court’s second opinion:
Evidence at trial established that the New Orleans Police Department received information over its narcotics hotline that a “cuban male” was selling, crack cocaine at 1118 St. Andrew Street in New Orleans. On 13July 18, 1996, detectives from the narcotics unit set up a surveillance of the house at that address. Detective Keith Fredericks was assigned primary responsibility for the surveillance, and watched the house from a position directly across the street. Detectives Paul. Toye and Joseph Thomas also conducted surveillance from a different location. All three detectives observed a second male arrive at the residence on a bicycle at approximately 8:15 p.m. The second male was wearing a dark T-shirt and jeans, and was later identified as defendant. Defendant entered the residence using a key. .
The- detectives did not observe any narcotics activity prior to defendant’s arrival. However, about fifteen minutes after defendant entered the residence, they saw a woman approach the house and knock on the door. Defendant answered the. door and had a conversation .with the woman. She handed him what appeared to be U.S. currency and he retrieved an object from inside the house and handed it to her. The detectives observed two other individuals approach the house and make similar transactions. They did not observe any other males fitting the vague description given by the police dispatcher on the *1007 premises at any time during their surveillance.
Detectives’ [sic] Toye and Thomas sought a search warrant based on the tip from the narcotics hotline and on their own observations of what appeared to be narcotics activity. A search warrant was obtained at 10:09 p.m. Approximately eight officers proceeded to defendant’s residence to execute the warrant. Upon their arrival, they observed an unknown male, later identified as Jessie Lopez, sitting on the front steps. As soon as Lopez saw the officers, he ran inside the house and locked the door behind him. Detectives Toye, Thomas, Michael Harrison, and Gabriel Favoroth pursued Lopez inside the house after announcing themselves as police officers and forcing open the door with a battering ram.
Detective Harrison apprehended Myers in the den. Detective Harrison ordered him to the floor [sic] and defendant cooperated. Detectives Toye and Thomas proceeded to the rear of the house, where they observed a closed bedroom door with light shining from underneath it. Believing that Lopez had fled into that bedroom, Detective Thomas opened the door. Lopez immediately fired two shots, one of which hit Detective Thomas in the chest. Detective Thomas backed out of the doorway and [¿fell to the ground in the hallway. At that point, Detective Toye could see that Lopez had barricaded himself between the bed and wall and was hiding behind a bucket. When Lopez continued to fire, Detective Toye shot and killed Lopez. Detective Wilson, a fellow officer [sic] took Thomas to the hospital. Detective Thomas died about an hour later at the hospital.
The case was re-classified as a homicide investigation once Lopez was determined to be dead at the scene. Sergeant Cynthia Patterson of the homicide division took charge of the investigation. She and Detective Donald Nides conducted a search of the residence. In the bedroom where Lopez was killed they found a .25 caliber automatic weapon and several empty shells near his body. In that same room they also found eight rocks of crack cocaine wrapped in individual packages, and various drug paraphernalia including syringes, razor blades, and a crack pipe. The officers also discovered some Vicodin pills hidden inside an eyeglass case on the bedside table. In several rooms, including the den where defendant was apprehended, they found loose marijuana and partially smoked marijuana cigarettes.
Peter Richarme testified that he managed the duplex at 1116-1118 St. Andrew Street for his mother. He rented the downstairs apartment to defendant, and defendant subsequently brought in Lopez as a roommate. At defendant’s request, the receipt for the June 1996 rent was made to defendant, but the receipt for the July 1996 rent was made to Lopez. Mr. Richarme stated that on the two or three occasions he had visited the property, both defendant and Lopez were there. To his knowledge, defendant and Lopez were both living there up until the day of the shooting.
The tenants of the upstairs apartment, Kirk Hooter and Tammy Smelley, also testified. They both stated that defendant had originally lived with Lopez downstairs, but that he had moved upstairs due to a falling out with Lopez. On the night of the shooting, defendant had come inside the upstairs apartment after getting off work, but headed downstairs to speak to Lopez about a job Lopez had asked defendant to secure for him. Ms. Smelley testified that she thought crack cocaine was sold from the *1008 downstairs apartment. Mr. Hooter also stated that he believed Lopez was involved in selling narcotics.
State v. Myers, at pp. 2-5, 773 So.2d at 886-87.
LAW AND ANALYSIS
Myers raised the following claims in his application for post-conviction relief filed below: (1) twenty-two instances of ineffective assistance of counsel; (2) Brady violations; (3) insufficient evidence and the inapplicability of the felony-murder doctrine; (4) excessive sentence; and (5) unconstitutionality of statutes for selecting grand jury forepersons' in Orleans Parish as local laws and equal protection violations because of the systematic exclusion of African-Americans from service as grand jury forepersons. The state responded to all of Myers’ claims.
Myers argues that trial counsel manifested his apparent lack of knowledge of criminal law and procedure, rules of evidence, and trial -techniques. Louisiana courts have adopted the two-pronged test for determining the effectiveness of counsel established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In State v. Lewis, 2003-1234, p. 14 (La.App. 4 Cir. 6/2/04), 876 So.2d 912, 920, this court discussed the standard of proof necessary for an ineffective assistance of counsel claim:
A criminal defendant is guaranteed the effective assistance of counsel. U.S. Sixth Amendment; La. Const, art; I § 13. To prevail on a claim of ineffective assistance, a defendant must demonstrate (1) that his attorney’s performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that counsel’s errors or omissions resulted in prejudice so great as to undermine confidence in the outcome. The Sixth Amendment does not guarantee errorless counsel [or] counsel judged ineffective by hindsight,” but counsel reasonably likely to render effective assistance. Judicial scrutiny must be “highly deferential” and claims of ineffective assistance are to be assessed on the facts of the particular case as seen from “counsel’s perspective at the time,” hence, courts must indulge “a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.”
\,Jd. at p. 14, quoting State v. LaCaze, 99-0584, p. 20 (La.1/25/02), 824 So.2d 1063, 1078-79 [footnotes omitted; emphasis added]. This court further stated:
In State v. Brooks, 505 So.2d 714 (La. 1987), the Louisiana Supreme Court stated that “hindsight is not the proper perspective for judging the competence of counsel’s trial decisions. Neither may an attorney’s level of representation be determined by whether a particular strategy is successful.” Id. at 724. This Court has also recognized that if the trial counsel’s actions fall “within the ambit of trial strategy”, they do not “establish ineffective assistance of counsel.” State v. Bienemy, 483 So.2d 1105, 1107 (La.App. 4 Cir.1986).
Id. at p. 15, 876 So.2d at 920.
Myers lists twenty-two examples of trial counsel’s ineffectiveness. The first seven instances relate to the motion to suppress hearing. He claims that counsel argued a “probable cause” issue at the motion to suppress hearing when there was an indictment and no need for a finding of probable cause, and his counsel was not paying attention at the hearing when the state tendered a witness. Myers alleges that counsel called a defense witness to the stand for no purpose and attempted to suppress evidence because Myers was not in constructive possession of the contra *1009 band. He argues that through cross-examination of the defense witness, the state found out that the witness did not know how long Myers had been downstairs on the night of the shooting and alerted the state as to his defense. Myers claims that counsel did not appear to know what motion was being heard, referred to a motion to reduce bond, and he finally withdrew the motion at the end of the hearing.
The state responds that the issue was not whether defense counsel, who was apparently not a full-time criminal attorney, thought it was appropriate to prove lack of possession of the contraband, but whether Myers received reasonable representation and whether he had established that he had been prejudiced. The |7state argues that the only fact disclosed by the defense witness’ testimony related to the fact that Myers claimed that he was only an occasional visitor to the scene where the shooting occurred and that he did not possess any drugs. It contends that Myers did not show how that disclosure prejudiced him. The state argues that Myers presented no evidence to show that defense counsel withdrew a meritorious motion to suppress evidence; the evidence was seized pursuant to a warrant or in plain view when the officers followed Lopez into the apartment and then defended themselves from Lopez’s attack.
A review of the motion to suppress hearing shows that defense counsel informed the trial court at the very beginning of the hearing that the defense did not file any motions. When the court asked if counsel was interested in a motion to suppress the identification, he answered “[M]ay be.” When told that the motions to suppress would be heard that day or not at all, counsel noted that he was not sure that Myers had a claim for a motion to suppress the evidence. Later on after calling Kirk Hooter (“Hooter”) to the stand, defense counsel appeared to be attempting to show that Myers was not in possession of the contraband. Counsel reiterated that the defense knew nothing about the seizure. Counsel again stated that he did not file a motion to suppress the evidence and did not care how the evidence was seized. At the end of the testimony, defense counsel said that he had no problem with the seizure and withdrew the motion to suppress the evidence. The court then heard the motion to reduce bond.
Although defense counsel apparently was not knowledgeable about the limits of a motion to suppress hearing, clearly he did not believe that a motion to suppress evidence would have helped Myers. Counsel stated that the defense was not interested in the seizure of contraband of which Myers claimed that he knew | snothing. Although in his post-conviction application Myers argues that defense counsel withdrew the motion to suppress even though it had merit, he never explains how the motion had merit or how the evidence seized pursuant to a search warrant could have been suppressed. Although Myers pointed to counsel’s misunderstandings, he does not show how trying to argue about probable cause or trying to show the lack of possession of the contraband prejudiced him. In his memorandum supporting the ineffective assistance of counsel claim, Myers argues that calling the witness to testify that he was not living in the downstairs apartment alerted the state to his defense and allowed the state to learn that the witness did not know how long he was downstairs on the night of the shooting. Hooter and his girlfriend both testified at trial that Myers was staying with them on the night in question, but stated that he had gone downstairs to talk to Lopez. Myers does not show how he was prejudiced.
*1010 Myers’ eighth ineffective assistance of counsel claim relates to defense counsel’s comment at a hearing on a motion in limine. Counsel allegedly referred to the photographic lineup as “internal incest.” Actually, defense counsel had requested that the state’s witness not be allowed to mention the photo lineup. Counsel explained that one officer showed another officer a photo lineup, but the only other person present on the night of the shooting was not included in the pictures. Counsel then said that he considered that “internal incest” because officers were having other officers identify suspects. Myers does not even allege how that comment prejudiced him. Similarly he does not show the prejudice suffered from his ninth claim relating to counsel’s alleged confusion about motions in limine and stipulations at the 13 March 1997 hearing. The state correctly argues that counsel apparently sought by means of stipulations to exclude from trial the | flcontents of the police incident report and search warrant application and return as well as rent receipts showing that Myers lived at the apartment to be searched pursuant to the search. The state rejected the stipulation, and Myers does not show prejudice.
In Myers’ tenth ineffective assistance of counsel claim he contends that counsel did not answer the court when asked about swearing in special prosecutors (former New Orleans prosecutors who had taken jobs in Jefferson Parish) and instead complained about a continuance granted to the state at the last trial date. The state in its responsé notes that counsel had no opinion as to whether an additional oath was necessary, and the court felt that an oath was unnecessary. Defense counsel however felt that he had to note for the record that the state may have improperly been granted a continuance at the prior trial setting. Some disagreement as to what counsel was told to be the reason for the prior continuance existed; however, the court cleared up the matter. Counsel wanted the state’s continuance noted because another month had passed. Myers does not demonstrate that he was prejudiced.
Myers’ eleventh claim involves defense counsel’s objection during voir dire examination when the state was discussing the felony murder doctrine. Counsel objected and stated that the prosecutor was not properly stating the law of principals. The trial court overruled the objection and noted that the state was explaining felony murder. Although Myers argues that this instance shows counsel’s lack of knowledge of criminal law, he does not establish how prejudice was created.
In his twelfth claim Myers argues that defense counsel moved for a directed verdict when such a procedure was not available in criminal trials. The state hnconcedes that Louisiana law did not allow for directed verdicts in criminal jury trials, but noted that the motion was made outside the presence of the jury and counsel’s arguments provided the rationale under which the conviction on one of the two counts was vacated. Counsel moved for a directed verdict of acquittal based on the fact that the state in its opening statement admitted that Myers was not the man who committed the homicide, and he was not the engaged in the perpetration of the felony. The state countered that the ongoing offense or series of events by Lopez and Myers constituted res gestae, and the trial court denied the motion. Once again Myers does not show how he suffered prejudice.
In his thirteenth claim Myers argues that defense counsel failed to object to Sgt. Patterson’s testimony to the presence of marijuana, cocaine, and crack cocaine packaged “as if for sale” when the officer had not been qualified as an expert *1011 and the state had not laid a foundation that the evidence was in fact narcotics or paraphernalia. The state responds that Sgt. Patterson, a homicide detective, testified to what she personally observed in the apartment, and La. C.E. art. 701 does not prohibit her from testifying to her perceptions. The state also notes that the fact that the evidence tested positive for narcotics was not a contested issue, and the state offered the stipulated testimony of the criminalist that the items tested positive for marijuana and cocaine. Similarly, the quantity was not at issue, and the sergeant found the eight cocaine rocks wrapped in individual packages; the other officers testified that they saw Myers involved in three drug transactions. Myers has not carried his burden of proof.
By his fourteenth claim Myers argues that defense counsel asked his employer and neighbors if he drank alcohol or smoked cigarettes in an attempt to show that he would not have sold narcotics. However, that questioning served no |nreal purpose, was considered character evidence, and opened the door for the State to cross-examine him with bad character evidence, including a prior guilty plea to a drug charge. According to the two excerpts of trial testimony attached to the application, Cyril Zara (“Zara”) testified that he knew Myers for six months before the arrest; Myers did plumbing, roofing, painting, and foundation work on Zara’s camp and some rental apartments. Zara stated that Myers was never absent and very rarely late. He never appeared drunk or “hungover”. Zara said that after work Myers bought a carton of beer at the store to take home. Zara never saw Myers buy hard liquor or smoke, but in later testimony Zara said that he saw Myers smoke cigarettes. He stated that even after the manslaughter charge, he would let Myers work on his property because he thought Myers was not guilty. On cross-examination Zara stated that Myers was reliable and did good work. When asked if it would surprise him that in 1996 a New Orleans Police Department (“NOPD”) officer identified Myers as buying crack cocaine, he said that he was not aware of that. Defense counsel twice declared that there had been no evidence of that prior crack cocaine buy. Questioning continued, and the court told defense counsel that he had brought up the issue of Myers’ character. The court noted a prior conversation with counsel, who had stated that he knew the law in the area. The court overruled the objection. Zara admitted that he did not know what Myers did at night.
According to trial testimony excerpt, Hooter testified that he knew Myers not quite a year. Hooter said that he lived at 1116 St. Andrew Street in the upstairs apartment above 1118 St. Andrew Street. When asked if Myers used any street dope, Hooter stated: “Not that I know of.” He stated that he “guessed” that he would know because Myers lived with him. Tammy Shelley testified that she was l12upstairs with Hooter on the night of the shooting. She said that Myers did not smoke cigarettes, but then stated that she did not know if he used any-kind of street dope. She then stated that because Myers lived with her and Hooter, she guessed that she would know and stated that Myers never did drugs in her presence.
The state in its response points'out that the defense involved the fact that Myers was not a resident in the apartment searched and he was not a drug user; the only way to place that before the jury was by calling character witnesses to the stand. The state also noted that defense counsel appeared to be aware of the prior crime and apparently decided to put. the character evidence before the jury. The state *1012 properly contends that defense counsel made a calculated decision to call the character witnesses as part of his trial strategy, and the trial court declared in its judgment that such an error that falls within the ambit of trial strategy does not establish ineffective assistance of counsel.
At the 31 March 2004 evidentiary hearing the trial court noted that if defense counsel had not called the character witnesses to the stand, Myers would probably be claiming that decision constituted ineffective assistance of counsel. The state argued that defense counsel was faced with a “deck of cards,” and he dealt them the best that he could. The prosecutor said that the verdict of guilty does not mean that counsel was ineffective. He argues that trial counsel either put the character witnesses on the stand with the possibility of impeachment or presented no real defense because Myers claimed that he was not a drug dealer and no longer lived in the apartment with Lopez. The state noted that a review of the transcript shows that the defense “was aggressively presented here. This was no mish mash, hop scotch,. This man clearly thought through what he [sic] going to do for Mr. Myers and carried that plan through.”
11sMyers does not show how counsel could have effectively defended him without putting his character before the jury or calling the witnesses. That decision must be considered trial strategy, which would not constitute ineffective assistance of counsel.
By his fifteenth claim Myers argues that during the state’s rebuttal, defense counsel failed to object to the admissibility of the guilty plea entered by the purchaser in an interrupted cocaine sale observed months before by Officer Phili-bert, who testified that Myers was the seller. He also claims that defense counsel asked whether the man pleaded guilty. Officer Philibert, who stated that the transaction in April 1996 occurred less than a half a block from 1118 St. Andrew Street, identified Myers as the seller who escaped. The state points out that Myers does not present any argument as to why the testimony was objectionable or inadmissible because the state was impeaching the defense character witnesses with the guilty plea entered by a man purchasing drugs from Myers before the night of the shooting. The state argues that Myers failed to show how his counsel could have prevented the use of the evidence. Myers fails to establish error and prejudice.
In his sixteenth claim Myers argues that counsel failed to object to the state’s remarks in closing argument that Lopez, who was killed after shooting one of the officers entering the apartment with a search warrant, was selling drugs when there was no evidence to that fact. The state persuasively argues that Lopez ran from the police and shot at the officers; drugs were found in the apartment. The Supreme Court had also discussed the proof of drug dealing. See State v. Myers, 760 So.2d at 316. The state’s closing argument involved the evidence presented and the |14concIusions and/or inferences from that evidence. Myers has not shown that his counsel erred in this instance or that he was prejudiced by the remarks.
By his seventeenth claim Myers claims that defense counsel erred by informing the jury in his opening statement and closing argument that he (Myers) had been incarcerated since the date of the shooting because that painted him to be a bad or at least a dangerous person. The state counters that a review of the defense arguments show that counsel was attempting to cast his client in a sympathetic light: he had been misidentified and unjustly accused and incarcerated. Therefore, the *1013 state concedes the decision was one relating to strategy and should not be second-guessed. In the opening remarks defense counsel noted the tragedy of the officer’s death, but stated that Myers, who had been incarcerated for eight months, was not the man at fault. He argued that the officers had Lopez and then took the leap to include Myers. In closing argument counsel stated that Myers had nothing to do with dealing drugs, and the only evidence was presented by an officer who would have done anything to help Officer Thomas. He noted that Myers was not identified in the police report because he did not deal drugs. Myers does not establish that counsel committed error or that he was prejudiced.
By his eighteenth claim Myers argues that defense counsel failed to object to the state’s comments during rebuttal closing argument relating to the hardships of the slain officer’s family. The state justifiably notes that Officer Thomas had been dead the eight months that Myers had been incarcerated. It noted that the officer’s two children would never see their father again. The state argues that dealing drugs is not a victimless crime as the deaths of Officer Thomas and Lopez demonstrate. The state in its response correctly argues that the remarks were not objectionable, and they were made in response to defense counsel’s closing 11Rargument. Myers does not establish that his counsel erred or that he was prejudiced by the error.
Myers’ nineteenth claim relates to the state’s description of Myers throughout trial as a drug dealer without any evidence being presented to prove that fact. The state notes in its response that Myers did not provide an excerpt from the trial transcript to support his claim or to show where defense counsel should have objected. The state correctly focuses on the testimony by the officers, who said that they observed Myers involved in drug sales prior to the shooting incident that night. Myers does not carry his burden of proof on this issue.
Myers’ twentieth and twenty-first claims related to defense counsel’s decision to call the defense witnesses to the stand without knowing the substance of their testimony and whether it would hurt the defense.[3] ' He alleged that counsel put on evidence that served no legitimate purpose, but permitted the state to introduce bad character evidence. Additionally, Myers claims that counsel did not allow him to testify even though he made it clear that he desired to take the stand. The state in its response focuses on the fact that the only defense available related to the police officers’ mistaken identification of Myers as the seller of drugs and the fact that Myers was no longer a resident of the apartment where the drugs were found and the shooting occurred. It noted that the strategy of questioning good citizens, who were not connected to the case and believed that Myers was not a drug dealer and did not live where the drugs were being sold, was beneficial. The state argues that the fact that impeachment evidence in the form of Myers’ prior hficocaine sale was then introduced was part of a strategy and should not be second-guessed on post-conviction. It claimed that Myers was not convicted because his character witnesses were unaware of his prior bad act; he was convicted because the officers observed him *1014 engaging in a narcotics transaction from the apartment where the shooting occurred and evidence showed that he was a resident therein along with Lopez. Myers provides nothing to show that he asked to take the stand; he does not carry his burden of proof in that regard.
Toward the end of the March 31, 2004, evidentiary hearing, the trial court declared:
I understand that John Reed didn’t handle this case or Ike Spears didn’t handle this case, he didn’t have that kind of an attorney who would have dealt some other kinds of things handling the case. But I’ll look through everything and if I see something that’s glaring, I’m going to have to give them the benefit of the doubt on that.
At the June 17, 2004, argument, the defense argued only the ineffective assistance of counsel claim. Counsel noted that defense counsel was retained and argued that the state never proved that a drug transaction occurred or that Myers was involved in selling drugs. He contended that the officers never stopped any of the buyers to verify that they had in fact purchased drugs. He stated that police officers found only a couple of roaches on Myers when he was arrested. The defense argued that Zara and Hooter were not character witnesses, and their testimony should not have opened the door to Officer Philibert’s testimony about Myers’s prior cocaine sale, but counsel never objected.
The court noted in its June 17, 2004, judgment that Myers listed ten witnesses, who could testify in support of his claim of ineffective assistance of |17counsel, but no witness was called to testify. The court stated that defense counsel indicated that the evidentiary hearing was “essentially a paper hearing,” and only documents were offered in support of his claims. The court noted that the trial was held in another section of court; therefore he was unable to observe defense counsel’s strategy. However, the court concluded that Myers had not made the required showing for an ineffective assistance of counsel claim of error and prejudice under Strickland, supra. There is no error in that conclusion.
Myers argues that the state failed to disclose Brady material. He claims that the fifty-five page supplemental police report, which contained conflicting statements by police officers, evidence of other criminal activity introduced at trial, and proof that seized evidence (which field-tested negative for heroin) had been discarded and not sent to the lab. He also claimed that the state did not turn over favorable witness statements including: (a) NOPD Officer Donald Nides’ statement that he disarmed Lopez when there was no testimony at trial that Officer Nides entered the residence; (b) Officer Paul Toye’s statement that he disarmed Lopez; (c) the statements of Detectives Michael Harrison and Gabriel Favaroth and other officers; and (d) Thomas Kearney’s statement in which he stated that he was detained by narcotics officers while they were executing the warrant (Myers claims that Kearney was coached or threatened with arrest without any proof, but Kearney stated that the officers did not use excessive force).
Myers argues that the state failed to provide discovery when requested and cited examples: (1) information requested by questions in the motion for bill of particulars was not provided (the names of the officers at the bedroom door when the shooting occurred did not include Officer Nides whose statement indicated that he was inside; the names of persons interviewed; the time the ambulance was ^called; the time between Myers’s arrest and placing him in the police car; and his *1015 connection to the crime); and (2) information (requested in motion for information) relating to the methods and procedures of scientific testing of evidence; information requested in prayer for oyer relating to evidence of other crimes (the state answered “Not at that time, the State reserves its right under Prieur”). Once again three witnesses were listed, but none testified at the evidentiary hearing.
In State v. Bright, 2002-2793, pp. 5-6 (La.5/25/04), 875 So.2d 37,42, the Louisiana Supreme Court discussed the failure to disclose favorable evidence to the defense:
In Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that suppression by the prosecution of evidence favorable to the accused after receiving a request for the evidence violates a defendant’s due process rights where the evidence .is material either to guilt or punishment, without regard to the good or bad faith of the prosecution. For purposes, of the State’s due process duty to disclose, no difference exists between exculpatory evidence and impeachment evidence. State v. Kemp, 00-2228, p. 7 (La.10/15/02), 828 So.2d 540, 545. The Brady rule encompasses evidence which impeaches the testimony of a witness when the reliability or credibility of that witness may determine guilt or innocence. United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); State v. Knapper, 579 So.2d 956, 959 (La.1991).
Nevertheless; it is important to note that Brady and its progeny do not establish a general rule of discoverability, and not every case in which it is discovered post-trial that favorable evidence was withheld by the State will result in a reversal of the conviction. A prosecutor does not breach any constitutional duty to disclose favorable evidence unless the “omission is of sufficient significance to result in the denial of the defendant’s right to a fair trial.” United States v. Agurs, 427 U.S. 97, 108, 96. S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976). For purposes of Brady’s due process = rule, a reviewing court determining materiality must ascertain:
not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. [Emphasis supplied.]
Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995). See also, State v. Strickland, 94-0025, p. 38 (La.11/1/96), 683 So.2d 218, 234. Thus, the reviewing court does not put the withheld evidence to an outcome-determinative test in which it weighs the probabilities that the petitioner would have obtained an acquittal at trial or might do so at a second trial. Instead, a Brady violation occurs when the “evidentiary - suppression ‘undermines confidence in the outcome of the trial.’ ” Kyles, 514 U.S. at 434, 115 S.Ct. at 1566 (quoting Bagley, 473 U.S. at 678, 105 S.Ct. at 3381).
The state in its response argues that information from the supplemental report did not fall in this category, namely that the testimony of two officers, Sgt. Patterson and Detective Toye, placed Detective Nides at the crime scene, and Myers did not clearly explain how the fact that Officer Nides was at the crime scene would have exculpated him. ■ The state notes that •the report indicates that Detective Toye moved the gun away from Lopez’s body, but Detective Nides turned over Lopez’s body and removed his weapon. The state further contends that even if this had been *1016 a material issue (which it was not), the report does not contain exculpatory evidence as to which officer removed the gun. The state correctly points out that was no real argument relating to the statements of Detectives Harrison and Favaroth and other officers, and he fails to note any exculpatory evidence that had been withheld. The state argues that the claim relating to Thomas Kearney’s statement presents nothing for review because Myers provided no support for his assertion that Kearney’s statement that the officers did not mistreat persons detained during the investigation was made under coercion or the threat of arrest.
In response to the claims relating to discovery rules, the state argues that it correctly listed the officers who were at the bedroom door when the shots were fired; Officer Nides was outside and did not enter until he heard the shots. The 12pstate contends that Myers is not entitled to the names of every person the district attorney interviews, and Myers did not state what exculpatory evidence was withheld there. The state argues that the issues of the time that the ambulance and the time interval from Myers’s arrest to his placement in the police car arose at the motions hearing, and the prosecutor stated on the record that he did not have that information; Myers has not shown that attacking the officers’ timeline was in some way exculpatory in nature.
The state responds that Myers was not entitled to the state’s prosecution theory when counsel asked for the connection between Myers and the crime charged. The state argued the crime charged and the elements to be proven were evident from the record, and Myers did not establish that any exculpatory evidence was withheld. The state further argues that any information relating to the tests performed on the contraband was available by means of a subpoena duces tecum directed to the NOPD crime lab, and Myers failed to establish that the information would have contained exculpatory evidence or that he was prejudiced. The state responds to the claim that it had withheld evidence of Myers’ other crimes by noting that Prieur notice is required if the evidence is to be used in its case-in-chief or to impeach Myers; here the evidence was used to impeach Myers’ character witnesses and defense counsel was aware of the other crime, because the record reflects that fact.
The trial court in its judgment noted that it did not handle the trial and could not know whether trial counsel was satisfied when the state answered “not entitled” to some requests for information. Adopting the state’s adequate written response, the court stated:
|21[T]his court cannot reasonably conclude that the information gleaned from the supplemental police report would have potentially changed the outcome of the trial, or that failure to provide the information resulted in prejudice to Myers. If counsel was comfortable with the information which was disclosed to him pursuant to his request for a bill of particulars, it would fall within the ambit of trial strategy.
Myers did not carry his burden of proof under Brady and its progeny. He does not show that exculpatory evidence material to his guilt was withheld, and that the suppression of the evidence undermined confidence in the outcome of the trial. This claim lacks merit.
Myers next argues that the felony-murder doctrine does not apply because the felony in which he was allegedly engaged did not directly cause the death of another. The state responds that this claim was essentially an insufficiency of the evidence *1017 claim. The state correctly points out that the claim had been raised on appeal and should not have been considered again. La.C.Cr.P. art. 930.4. Additionally, the state persuasively argues that the Supreme Court has considered the argument and has held that the evidence supported his conviction for felony manslaughter of the police officer. State v. Myers, 760 So.2d at 310. The trial court did not consider those claims and cited La.C.Cr.P. art. 930.4. The trial court’s decision is correct.
Next, Myers claims that the twenty-year sentence was grossly excessive and cruel and unusual punishment. The state in its response correctly argues that the issue was raised on appeal and should not be considered on post-conviction, -La. C.Cr.P. art. 930.4, and sentencing claims are not cognizable in post-conviction proceedings. State ex rel. Melinie, 93-1380 (La.1/12/96), 665 So.2d 1172. The trial court concluded that excessive sentence is not one of the seven grounds for post-conviction relief in article 930.3. The trial court’s decision is correct.
I^Myers next argues that the system for selecting grand jury members in 1996 was unconstitutional per se or, alternatively, was susceptible to abuse that denied him the right to equal protection of the law and due process. He also contends that the statutes were unconstitutional local laws. The state responds that no pretrial motion to quash the indictment was filed. A motion to quash is a prerequisite to challenging the selection of grand jury forepersons. State v. Juarbe, 2001-2250 (La.App. 4 Cir. 7/31/02), 824 So.2d 1240, 1249, writ denied, 2002-2846 (La.10/31/03), 857 So.2d 467; State v. Woodberry, 2002-0994 (La.App. 4 Cir. 6/5/02), 820 So.2d 638, 642, writ denied, 2002-2856 (La.3/21/03), 840 So.2d 544. The failure to file a pre-trial motion to quash waives the relator’s equal protection claim arising out of allegedly discriminatory selection of grand jury forepersons in the parish. Deloch v. Whitley, 96-1901 (La.11/22/96), 684 So.2d 349. These claims lack merit.
CONCLUSIONS
We therefore conclude Myers’ claims have no merit. There is no error in the trial court’s judgment denying him post-conviction relief.
WRIT GRANTED; RELIEF DENIED.

. The Supreme Court held that the evidence supported Myers' conviction for felony manslaughter of the police officer shot by his co-tenant, Lopez, but did not support Myers' felony manslaughter conviction arising from the police shooting of his co-tenant. Id. at '316-17

. This court held that: (1) Myers failed to preserve for appeal the issue of whether officer's rebuttal testimony was admissible; (2) Myers could not raise for first time on appeal the issue of whether prosecutor was improperly allowed to extract promise to convict from jury; (3) Myers failed to preserve for appeal issue of whether prosecutors were qualified to prosecute his case; and (4) sentence was not excessive. Id. at 888-91.

. In his writ application Myers added one more claim that counsel failed to impeach and/or argue critical discrepancies in the evidence relative to whether the officers conducting the surveillance could have seen what they said that they saw. He makes no further argument. The claim is far from clear, and Myers does not show how he was prejudiced.