991 So.2d 1143 (2008)
STATE of Louisiana
v.
Warren CHAMP.
No. 2007-KA-1281.
Court of Appeal of Louisiana, Fourth Circuit.
August 13, 2008.
*1144 Keva Landrum-Johnson, District Attorney, David S. Pipes, Jr., Assistant District Attorney, New Orleans, LA, for State of Louisiana.
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, LA, for Defendant/Appellant.
(Court composed of Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS, JR., Judge DAVID S. GORBATY).
MAX N. TOBIAS, JR., Judge.
On 15 February 2007, the state charged Warren Champ ("Champ") by bill of information with one count of violating La. R.S. 14:62, simple burglary of a building. On 17 April 2007, Champ appeared before the trial court for arraignment and entered a plea of not guilty. On 24 May 2007, the trial court heard his motion to suppress his statement and held a preliminary hearing. At the close of the hearing, the trial court denied the motion to suppress and found sufficient probable cause to substantiate the charge brought.
On 18 July 2007, the state brought the case to trial. Prior to trial, Champ elected to have his case tried before a jury. The state introduced two exhibits and presented testimony from three individuals. Champ introduced one exhibit and presented no testimony. The jury found Champ guilty of simple burglary.
The trial court sentenced Champ on 15 August 2007 to two years at hard labor in the custody of the Department of Corrections with credit for time served. The state then filed a multiple bill of information, alleging Champ to be a three-time felony offender.[1] On 17 August 2007, Champ appealed and the appeal was granted.

STATEMENT OF FACTS
Officer Rodney Thomas testified that on 15 February 2007, he was on patrol with his partner when they received a call from the dispatcher notifying them of a report of a suspicious person going in and out of a residence in their vicinity. The report further indicated that the suspect was a black male wearing a brown cap, green and blue jacket, black pants, and riding a purple bicycle. Upon arriving in the 3400 block of South Robertson Street, Officer Thomas observed a man on a bicycle pull up to a building, get off the bicycle, and enter an apartment complex. He and his partner followed the man into the building. Officer Thomas noted that the man was wearing a brown cap, green and blue jacket, *1145 black sweat pants, and riding a purple bicycle. Further, Officer Thomas testified that the building was a vacant, flooded-out building that had been emptied of furniture. Officer Thomas testified that upon entering the building he heard thumping and crashing sounds which he equated to someone busting through sheet rock. He stated that he followed the sound to a back room where he observed the man remove a piece of drywall and reach into the wall with a gray pipe cutter in his right hand. Officer Thomas noted that copper piping was behind the wall. Officer Thomas also made an in court identification of Champ as the man who he witnessed enter the building and reach into the wall with a pipe cutter.
Officer Thomas identified the pipe cutter and a pair of gloves and identified them as those in the possession of Champ at the time of his arrest. Officer Thomas stated that Champ made a statement when he was being escorted out of the building: "He stated that the building was going to be torn down anyway, and he also stated that he worked for the owner."
Officer Thomas further testified that police detectives later came to the crime scene and contacted the owner of the building. Officer Thomas said he spoke to the building's owner by phone, who stated that he did not know the subject, authorize anyone to enter his building, or authorize anyone to take anything out of his building. On cross-examination, Officer Thomas testified that he did not observe Champ carrying the pipe cutter into the building or any copper pipe on Champ's person.
Officer Heather Gore made an in-court identification of Champ as the man she arrested on 15 February 2007. She testified that she first saw Champ in front of the building at 3400 South Robertson Street. She stated that she witnessed Champ park his bicycle and go into the building and that the building at 3400 South Robertson was "abandoned" and in the process of renovation, although the dry wall was still up inside the building. After entering the building, Officer Gore testified that she heard banging and crashing sounds and followed the sounds to a bathroom where she saw Champ with an object in his hand, reaching into a hole in the wall that revealed copper piping. Further, like Officer Thomas, she was able to identify state's exhibits, the pipe cutter and gloves taken from Champ at the time of his arrest. On cross-examination, Officer Gore testified that she did not observe Champ carrying the pipe cutter into the building or any copper pipe on Champ's person.
Lastly, the state called Abner Tritt ("Tritt") to testify. Tritt stated that he owns the property at 3400 South Robertson. He also testified that while he knew Champ, Champ had not worked for him for several years. Additionally, Tritt stated that he never gave Champ permission to be in, or work at, the building at 3400 South Robertson. In fact, Tritt testified that he did not have anyone working at 3400 South Robertson on 15 February 2007, and that he had no plans to tear down the building. On cross-examination, Tritt noted that while he owns dozens of properties throughout the city he does not usually have more than three people working for him at any given time.
Champ put on no witnesses but did introduce one item of evidence, a document from the local assessor's office identifying Tritt as owner of 3500 South Robertson Street.[2] Following this introduction, both *1146 parties rested. The jury returned with a verdict finding Champ guilty of simple burglary.

ERRORS PATENT
The record reveals no errors patent.

ASSIGNMENT OF ERROR NUMBER 1
In the only assignment of error urged by counsel, Champ asserts that the trial court abused its discretion when it denied his request, made on the morning of trial, for more time in order to retain new counsel. Champ's counsel first made an appearance on the record for himself and a student practitioner from a law clinic. Next, Champ's counsel requested a bench conference. After the bench conference, Champ's counsel stated on the record that the state had offered Champ a plea bargain of six years as a second offender, that he had notified Champ that, if convicted, he would be charged as a triple offender with a possible sentence of eight to twenty-four years, and that Champ wished to speak with the trial court. The defendant and the trial court then had the following exchange:
Mr. Champ:
I come here today. I'd like to have deficiency of counsel due to the fact that I'm not properly represented. I'd like to have me another attorney present on the trial.
And also I contacted a couple of places for a attorney, and they will get back here. I need to tell you that I feel that I'm not being properly defended at the time.
The Court:
Mr. Champ, I'm not going to do that. You're set for trial today. Mr. Duffy is more than competent. I've had him in court. I've been impressed with him. And let me just tell you what the law is. The law is this:
You are entitled to an attorney. I have appointed an attorney to represent you. You're not entitled to the attorney of your choosing, or picking out an attorney.
I know Mr. Duffy to be a competent lawyer. We're going to trial today.
Mr. Champ:
Well, I could have him to get my witness and stuff, and the time that he not been able to locate them, due to the fact that by mailing letters way before, months before the time, he didn't have timely opportunity because he have other kind of cases that he was handling.
And its my constitutional right that I'm not being properly defended.
The Court:
Do you think that there's an attorney that you're going to be the only case they will ever be handling?
Mr. Champ:
Well, I need to be handled to the best of my [sic] ability.
The Court:
And I'm sure Mr. Duffy will handle it to the best of his ability.
Mr. Duffy:
I don't think so, your Honor.
The Court:
You'll need to be getting dressed. Okay. That's the deal. We can call for a jury.
In view of the foregoing, Champ argues in his appellate brief that his conviction and sentence should be reversed because the trial court effectively prohibited him *1147 from proceeding to trial with a non-appointed attorney of his choosing without first deciding whether he had a justifiable basis for making his request on the morning of trial. The record contains a 10 December 2007 per curiam from the trial court wherein it states:
This Court has been served with a copy of the defendant's brief on appeal. On reading the brief and reviewing the record and transcript relevant to the issue, it appears that the record needs to be clarified, given that there were certain issues discussed at the bench that were not made absolutely clear on the record. First, the defendant never indicated that he had resources to hire another attorney. He simply wanted a new attorney to be appointed to his case. Second, the defendant also never actually asked for a continuance, and appointed counsel was ready for trial. Third, while the defendant talked in open court about his attorney mailing witness letters and not working to locate witnesses, the simple fact was made clear at the bench that there were no defense witnesses to locate. Had counsel felt there was a strong and realistic likelihood of finding or locating witnesses, and had counsel asked for more time, this court would certainly have considered such a request. Even now, while the case is pending on a multiple bill hearing, the defendant is still represented as an indigent by the same lawyer.
The Sixth Amendment to the United States Constitution guarantees that the accused in all criminal prosecutions shall have the assistance of counsel for one's defense. The Louisiana Constitution further provides that at each stage of a criminal proceeding, "every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment." La. Const. art. I, § 13. The right to the assistance of counsel is so fundamental to the constitutional guarantee of a fair trial that its denial cannot be considered harmless error. Holloway v. Arkansas, 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978). However, "the right to choose one's attorney is a right to be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system." State v. Leggett, 363 So.2d 434, 436 (La. 1978).
As noted above, Champ asserts that the trial court's denial of his request for a new attorney constituted an abuse of discretion thus mandating reversal of his conviction and sentence. He further maintains that the trial court's denial of his motion was arbitrary and is reversible error. Contrariwise, the state points out that over five months elapsed from the time of the offense until the time of trial and yet Champ made no efforts to retain private counsel. Further, the state argues that the trial court did not abuse its discretion when it denied Champ's request for a new attorney in light of the facts set out in the transcript and the trial court's per curiam.
The Louisiana Supreme Court has repeatedly upheld the trial court's denial of motions made on the day of trial based upon an accused's dissatisfaction with appointed counsel. See State v. Seiss, 428 So.2d 444, 447 (La.1983). Similarly, this court has also upheld a trial court's denial of an accused's request for a change of counsel made on the eve of a trial or hearing.
In State v. Robinson, 01-1458 (La.App. 4 Cir. 4/24/02), 818 So.2d 246, on the morning of a hearing on the state's motion to correct an illegal sentence, the defendant's appointed counsel informed the trial court *1148 that the defendant had retained an attorney who wished to file motions in connection with the matter. The trial court delayed the hearing so that the new attorney could be located. Some time later that day, the trial court informed the defendant that it could not locate his new attorney. Further, the trial court told the defendant that the re-sentencing was simply a ministerial hearing and that if the new attorney was going to represent him he could come in at a later date and file a motion to reconsider sentence. The trial court then resentenced the defendant.
On appeal, the defendant argued that the trial court erred in denying him the counsel of his choice. After reviewing the record and the law, this Court wrote:
No evidence in the record indicates that Mr. Wainwright had been retained to represent Robinson. (Robinson was represented by OIDP at trial, on appeal, and at his re-sentencing). Furthermore, no evidence is present that the result of the sentencing hearing would have been different if Mr. Wainwright had been Robinson's defense counsel. The trial court noted that "resentencing" was merely "administerial," meaning ministerial, process. No showing is made by the appellant that he was prejudiced in any way by having Mr. Whittaker represent him at the hearing or that Mr. Whittaker was inept or incompetent. The appellant's position that he expected retained counsel (which was first made known to the court on the day of the sentencing hearing and for which the appellant offered no evidence) was an unreasonable expectation, and the trial court did not err in proceeding with appointed counsel.
State v. Robinson, 01-1458, p. 5, 818 So.2d at 249-250.
In State v. Harrison, 00-0213 (La.App. 4 Cir. 2/21/01), 782 So.2d 86, the defendant asked for new counsel on the morning of trial. The trial court denied the defendant's request and informed him that his appointed attorney was a good lawyer and that he would have appointed a new attorney for him if he had thought his attorney was incompetent. This court affirmed the trial court's denial of the defendant's request for a new trial.
We find the trial court did not abuse its discretion when it denied Champ's request, made on the morning of trial, for a new attorney. Indeed, the record demonstrates that the trial court considered thoroughly the circumstances surrounding Champ's request. We find that the trial court did not violate Champ's right to counsel and reject his assignment of error as without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER 1
In what appears to be his sole pro se assignment of error, Champ asserts that his conviction and sentence should be overturned because the state failed to disclose Brady material. Specifically, Champ argues that the state's failure to turn over copies of photographs taken of the crime scene necessitate the reversal of his conviction and sentence. Champ's argument on this point appears to be based on two references to photographs in the record. First, Champ, acting through counsel, filed a motion for discovery on 17 April 2007, wherein he asked the state to provide copies of photographs that: (1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment; (2) intended for use by the state as evidence at the trial; or (3) obtained from or belong to defendant. Second, both of the police officers who witnessed Champ removing copper piping from the building at issue testified that photographs were taken of the apartment by police photographers at the time of the arrest. *1149 Significantly, Champ's trial counsel made no motion for the production of the photographs or objected to their absence. The photographs are not in the record of these proceedings.
Because the photographs are not in the record on appeal, Champ asserts that the state's failure to provide him with copies of the photographs has so tainted his conviction and sentence that they must be overturned. In State v. Bright, 02-2793, pp. 5-6 (La.5/25/04), 875 So.2d 37, 42, the Louisiana Supreme Court discussed the failure to disclose favorable evidence to the defense:
In Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that suppression by the prosecution of evidence favorable to the accused after receiving a request for the evidence violates a defendant's due process rights where the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution. For purposes of the State's due process duty to disclose, no difference exists between exculpatory evidence and impeachment evidence. State v. Kemp, 00-2228, p. 7 (La.10/15/02), 828 So.2d 540, 545. The Brady rule encompasses evidence which impeaches the testimony of a witness when the reliability or credibility of that witness may determine guilt or innocence. United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); State v. Knapper, 579 So.2d 956, 959 (La.1991).
Nevertheless, it is important to note that Brady and its progeny do not establish a general rule of discoverability, and not every case in which it is discovered post-trial that favorable evidence was withheld by the State will result in a reversal of the conviction. A prosecutor does not breach any constitutional duty to disclose favorable evidence unless the "omission is of sufficient significance to result in the denial of the defendant's right to a fair trial." United States v. Agurs, 427 U.S. 97, 108, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976). For purposes of Brady's due process rule, a reviewing court determining materiality must ascertain:
not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. [Emphasis supplied.]

Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995). See also, State v. Strickland, 94-0025, p. 38 (La.11/1/96), 683 So.2d 218, 234. Thus, the reviewing court does not put the withheld evidence to an outcome-determinative test in which it weighs the probabilities that the petitioner would have obtained an acquittal at trial or might do so at a second trial. Instead, a Brady violation occurs when the "evidentiary suppression `undermines confidence in the outcome of the trial.'" Kyles, 514 U.S. at 434, 115 S.Ct. at 1566 (quoting Bagley, 473 U.S. at 678, 105 S.Ct. at 3381).
Further, this court has indicated that the burden of proving a Brady violation rests with the accused. State v. Myers, 04-1219, p. 21 (La.App. 4 Cir. 11/3/04), 888 So.2d 1002, 1017.
We find that Champ has failed to meet his burden of proof under Brady and its progeny. Specifically, Champ has failed to show that: (1) the photographs were exculpatory evidence material to his guilt; (2) the photographs were improperly withheld; and (3) the suppression of the photographs undermined confidence in *1150 the outcome of the trial.[3] Similarly, Champ has not shown that the state improperly failed to produce the photographs pursuant to his discovery request for all photographs that: (1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment; (2) intended for use by the state as evidence at the trial; or (3) obtained from or belong to defendant. Given the unequivocal testimony from the two police officers who witnessed Champ preparing to remove copper tubing from the building, it does not stretch credulity to infer that the crime scene photographs were routine photographs that were neither favorable to Champ nor material to the issue of guilt. Champ has failed to even argue that the absence of the photographs from his trial undermines confidence in the outcome of the trial.
Accordingly, Champ's pro se assignment of error lacks merit.

CONCLUSION
The conviction and sentence for simple burglary of Warren Champ is affirmed.
AFFIRMED.
NOTES
[1] A 10 December 2007 per curiam from the trial court indicates that the multiple bill trial had yet to take place. The remainder of the record does not indicate whether a trial has been held or the results thereof.
[2] We note that Tritt stated he owned the property at 3500 South Robertson Street. We also note the police officer's testimony that Champ was arrested for being in 3400 South Robertson Street. Although the jury did not see the police arrest record contained in the record on appeal, we note that it reflects an address of 3500 South Robertson Street as the location of the offense. In the overall context of this case, we find that the jury was within its discretion to believe that Champ was arrested for the simple burglary of 3500 South Robertson Street, being the property of Tritt.
[3] As previously noted, the photographs are not in the record. Thus, no party can say whether the photographs were exculpatory evidence material to the question of guilt.